**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**


JENNELL BLACK, et al.                          *

                                               *

      Plaintiffs,                              *

                                               *

v.                                             *          Civil Action No. 1:20-cv-03644-CCB

                                               *

THOMAS WEBSTER IV, et al.                      *

                                               *

      Defendants.                              *

*    *    *    *    *    *    *    *    *    *    *    *    *

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR BIFURCATION**

## INTRODUCTION

In a continuing effort to evade full accountability for the killing of Anton Black ("Anton"), Defendants seek to erect a new obstacle to this litigation, by prematurely asking the Court to bifurcate claims against the individual police officers from those against the governmental entities that employ them, and to stay discovery against the entity defendants. Defendants have not come close to meeting their burden to obtain this procedural relief.

As a premise to their Motion, Defendants ask the Court to treat this case as if it were purely a Section 1983 action in which the only claims against the Towns of Greensboro, Ridgely, and Centerville (collectively, "Towns") are derivative of damages claims against individual officers Webster, Manos, and Lannon ("Officer Defendants"), which it simply is not. Here, the Towns are Defendants in their own right, as equitable relief is sought from the Towns to prevent future police violence. Moreover, they are directly liable to Plaintiffs' for discrimination inflicted in violation of Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, as these claims lie against the entities regardless of the individual damages liability of the involved police officers. Furthermore, even if Plaintiffs had only pled *Monell* claims, the extensive involvement of the Towns' policymaking officials (including the direct involvement of the Chiefs of Police of Greensboro and Ridgely and the Town Manager of Greensboro) in causing the wrongdoing alleged creates intertwined issues of supervisory and municipal liability that makes bifurcation wholly inappropriate. The nature of Plaintiffs' claims here — disability discrimination claims, *Monell* claims, assertions of supervisory liability and a conspiracy among the Defendants— means that the discovery Plaintiffs are entitled to for development and proof of their claims would render bifurcation completely unworkable and unnecessarily duplicative, wasting time and resources of the parties and the Court. Furthermore,

Defendants' premature and overstated concerns about the alleged prejudice they would suffer *at trial* in the usual unified proceeding pale in comparison to the actual harm bifurcation would inflict *immediately* upon the Plaintiffs.  The parties have not even begun discovery.  How then, could the Court be expected to speculate about and determine now whether certain evidence would taint or confuse the jury?[1] Beyond the inefficiency of bifurcation in a case like this, truncating the case at the outset and granting a stay of discovery would be enormously prejudicial to the Plaintiffs, who have the right to present a theory of the case and seek accountability from all of the Defendants they contend are responsible for the tragic killing of Anton.

Defendants have not come close to meeting the burden they bear of showing that bifurcation is appropriate *in this case*. Indeed, in their Motion to Bifurcate and supporting Memorandum, Defendants do not even attempt to explain how segregating and delaying discovery or conducting two trials, one for the disability discrimination and *Monell* claims and one for constitutional claims against the individual officers and supervisors, is at all appropriate or more efficient. Indeed, Defendants do not address the disability discrimination claims at all.[2] Should the court grant the Defendants' request, the Plaintiffs would be unfairly prevented or needlessly delayed from pursuing significant claims against the Towns, as evidence they need to acquire through the discovery process to hold accountable all of the parties responsible for Anton's death becomes stale or perhaps even unattainable. Such a result would fly in the face of

---

[1] Defendants also purposefully ignore the availability of other measures, such as limiting instructions and motions in *limine*, to protect against unfair prejudice within a trial.

[2] Defendants assert that the disability discrimination claims are "perfect candidates for bifurcation,"  ECF No. 47-1 at 6, but fail to explain why that is or to distinguish the long list of cases in which this Court has held that bifurcation is *not* appropriate in litigation that includes both *Monell* claims and discrimination claims that lie directly against governmental entities.

justice, causing significant prejudice to the Plaintiffs, as well as thwarting principles of judicial economy and efficiency. Accordingly, the Court should deny the Defendants' motions for bifurcation and a stay of discovery.

## FACTS RELEVANT TO THE MOTIONS FOR BIFURCATION AND STAY

Plaintiffs repeat and incorporate by this reference, the Statement of "Factual Allegations in the Complaint" in Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' the Towns of Ridgely, Centreville, and Greensboro and Dennis Lannon, Michael Petyo, and Jeannette Cleveland's Motion to Dismiss, filed concurrently with this Memorandum.

## LEGAL STANDARD

In federal civil rights litigation, the ordinary "presumption is that all claims in a case will be resolved in a single trial, and it is only in exceptional instances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subjects of separate trials."[3] *Martinez v Robinson*, No. 99-11911, 2002 WL 424680, at *2 (S.D.N.Y. Mar. 19, 2002) (internal quotations omitted). In such special circumstances, the Court may bifurcate claims only if it would (1) "be conducive to expedition and economy," (2) "further[] the convenience" of the court and the parties, or (3) "avoid[] prejudice." Fed. R. Civ. P. 42(b). The decision of whether to bifurcate claims lies within the Court's "sound discretion," *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir. 1953).

---

[3] *See also Deocampo v. City of Vallejo*, No. 06-01283, 2007 WL 161452, at *1 (E.D. Cal. June 4, 2007) ("separation of issues for trial is not to be routinely ordered") (citing the Advisory Committee Notes to the 1966 Amendment to Fed. R. Civ. P. 42(b)); *Rosa v. Hartford*, No. 3:00CV1367, 2005 WL 752206, at *4 (D. Conn. Mar. 31, 2005) (bifurcation "remains the exception rather than the rule"); *Monaghan v. SZS 33 Assocs., L.P.*, 827 F. Supp. 233, 245 (S.D.N.Y. 1993) ("separate trials remain the exception rather than the rule, regardless of the nature of the action") (all denying bifurcation in the § 1983 *Monell* context).

As the moving party, Defendants bear the burden to justify bifurcation, so as to "overcome the general principle that a single trial tends to lessen the delay, expense and inconvenience to all the parties." *Clements v. Prince George's County*, No. 90-1878, 1992 WL 165814, at *1 (D. Md. June 30, 1992) (citations omitted); *see also Pavone v. Gibbs*, No. CV 95-0033, 1997 WL 833472, at *2 (E.D.N.Y. Sept. 29, 1997) ("The moving party bears the burden of establishing that separate trials are necessary to prevent prejudice or confusion."). *See generally,* 9A Charles Alan Wright & Arthur R. Miller, 9 Fed. Prac. & Proc. 2d § 2388 ("The major consideration, of course, must be which procedure is more likely to result in a just and expeditious final disposition of the litigation.") Likewise, when evaluating whether stays of discovery should be granted for deferred claims, courts have looked to these same factors relevant to bifurcation. *Karn v. PTS of Am.*, LLC, No. GJH-16-3261, 2020 WL 2794507, at *5 (D. Md. May 28, 2020).

Where, as here, civil rights litigation involves *Monell* claims under Section 1983, claims for equitable relief, and statutory claims that lie directly against the governmental entities – such as those under Title VI, VII or IX, the ADA and the Rehabilitation Act – the norm in this Court, as throughout the federal court system, is to deny bifurcation and proceed with the case in a unified manner. *See, e.g.*, *Sopp v. Page*, 1:20-cv-3123 (D. Md. January 29, 2021); *Medrano v. Jenkins,* 1:19-cv-02038-RDB (D. Md. July 27, 2020); *Savage v. Pocomoke City*, 1:16-cv-00201-JFM (D. Md. August 19, 2016); *Treadwell v. Prince George's County Health Dep't*, No. 13-0063, 2014 WL 3534006 (D. Md. Jul. 14, 2014); *Murphy-Taylor v. Hofmann,* 968 F. Supp. 2d 693 (D. Md. 2013); *Md. State Conference of NAACP Branches v. Dep't of Md. State Police*, Civil Action No. PWG-98-1098 (D. Md. Oct. 28, 2003); *Whittington v. Bd. of Educ.,* No. 94-398, 1995 WL 17002152 (D. Md. June 2, 1995).

<u>**ARGUMENT**</u>

**I. BIFURCATION WOULD PREJUDICE PLAINTIFFS, PROMOTE NEEDLESS DELAY AND INEFFICIENCY, AND THUS SHOULD BE DENIED.**

    **A. Defendants' motion ignores Plaintiffs' non-*Monell* claims against the Entity Defendants and the cases of this Court disfavoring bifurcation.**

Defendants' requests for bifurcation and a discovery stay are premised upon the mistaken notion that Plaintiffs' claims against Defendants Towns of Greensboro, Centreville, Ridgely and State of Maryland are wholly dependent upon successful resolution of their damages claims against the individual defendants. This is incorrect.

First, Defendants' motion ignores entirely the Plaintiffs' federal disability discrimination claims which lie directly against the Towns and thus are not predicated on any finding that the individual defendants are liable in damages for Anton's killing. Plaintiffs have made federal claims under both Title II of the ADA and Section 504 of the Rehabilitation Act – claims that are intricately intertwined with Plaintiffs' *Monell* claims as the discrimination is alleged to have occurred simultaneously with Defendants' violations of Plaintiffs constitutional and common law rights. Second, and equally important, Defendant's motion overlooks Plaintiffs' claims for equitable relief, including declaratory and injunctive relief, seeking to prevent the governmental entity defendants from using their authority to enable future police violence. Defendants instead erroneously attempt to recast this police reform case as one predominantly involving damages claims against individual officers, for which qualified immunity will be the controlling issue. Defendants' motion must fail for both reasons.

Defendants' motion to bifurcate fails to address the significance of Plaintiffs' federal disability discrimination claims, as illustrated by their reliance on cases involving solely *Monell*

claims as grounds for bifurcation here,[4] while ignoring the large body rulings rejecting

bifurcation outright in cases like this involving a mix of claims or requests for injunctive relief.

While this Court has granted bifurcation in certain damages cases where the *only* way a police

misconduct plaintiff can prevail against a municipality is by first prevailing on an underlying

constitutional claim, it has rejected bifurcation outright—or proceeded in a unified manner

without even entertaining the option of bifurcation—in cases such as this where the plaintiff

pleads additional bases for municipal liability. *See, e.g.*, *Sopp v. Page*, 1:20-cv-3123 (D. Md.

January 29, 2021) (denying bifurcation where Plaintiffs pled *Monell* claims and disability

discrimination claims under ADA and Rehabilitation Act); *Medrano v. Jenkins,* 1:19-cv-02038-

RDB (D. Md. July 27, 2020) (denying bifurcation where plaintiff alleged *Monell* claim and a

claim of race discrimination under Title VI against Frederick County); *Estate of Robert Ethan*

*Saylor v. Regal Cinemas, Inc.*, No. WMN-13-3089, 2016 WL 4721254 (D. Md. Sept. 9, 2016)

(allowing *Monell* claims and ADA claims to proceed in one unified manner); *Savage v.*

*Pocomoke City*, 1:16-cv-00201-JFM (D. Md. August 19, 2016) (denying bifurcation where

Plaintiffs alleged *Monell* claims and non-*Monell* claims, including claims for injunctive relief

and claims under Title VII); *Crystal v. Batts*, No. 14-3989, 2015 WL 8137660 (D. Md. Dec. 8,

2015) (denying bifurcation in § 1983 action where liability of police department was not wholly

derivative of liability of individual police sergeant); *Treadwell v. Prince George's County Health*

*Dep't*, No. 13-0063, 2014 WL 3534006 (D. Md. Jul. 14, 2014) (denying motion for bifurcation

---

[4] The sole case Defendants cite where a federal disability discrimination claim was at
issue was *James v. Frederick County Public Schools,* where the Plaintiffs' relied on claims under
the Individuals with Disabilities Education Act (IDEA) against Frederick County Public Schools.
However, the court in that case only bifurcated because the Plaintiff failed to adequately exhaust
her administrative remedies, a requirement that is specific to the IDEA. *James v. Frederick Cty.*
*Pub. Sch.*, 441 F. Supp. 2d 755, 759 (D. Md. 2006).

for § 1983 and Title VII claims alleging sex discrimination and retaliation by county and individual officials, on grounds that the county, as the employer, was a necessary party on the Title VII claim); *Murphy-Taylor v. Hofmann,* 968 F. Supp. 2d 693 (D. Md. 2013) (allowing sex discrimination case brought by deputy sheriff and U.S. government intervenor against individual and entity defendants to proceed in a unified manner, where case combined claims under Title VII, § 1983 and state law, resulting in settlement by all plaintiffs and defendants); *Md. State Conference of NAACP Branches v. Dep't of Md. State Police*, Civil Action No. PWG-98-1098 (D. Md. Oct. 28, 2003) (rejecting MSP request to bifurcate racial profiling and wrongful detention claims against individual officers from those against supervisors and the department, due to a Title VI claim alleging a pattern of racial profiling as to which the department itself was the only proper defendant and "involves a distinct basis of asserted liability from § 1983"); *Whittington v. Bd. of Educ.,* No. 94-398, 1995 WL 17002152 (D. Md. June 2, 1995) (denying summary judgment to individual school officials and local board in race discrimination and retaliation case combining Title VII and § 1983 claims, after which case went to trial in a unified manner, and jury returned verdict against all defendants). *See also Baynard v. Malone*, 268 F.3d 228 (4th Cir. 2001) (Title IX claim against School Board tried simultaneously with § 1983 claims against school principal and superintendent); *Fall v. Indiana Univ. Bd. of Trustees,* 33 F. Supp. 2d 729, 735-36 (N.D. Ind. 1998) (rejecting, three times, defendants' motions for bifurcation as leading to duplication and inefficiency in case combining claims under Title VII, § 1983 and state law).

To work around this well-established law, Defendants baldly assert, without the benefit of any analysis or authority, that "Counts 10 and 11, ADA Title II and Section 504 of the Rehabilitation Act claims respectively, are essentially education and training claims and run only

the against the governmental defendants and thus are perfect candidates for bifurcation." ECF No. 47-1 at 6. This conclusory characterization of Plaintiffs' claims completely ignores the facts implicating the individual actors, supervisory officials, and the governmental entities in both counts. Actions of the individual defendants, supervisors and entities in failing to adhere to the ADA and the Rehabilitation Act coincided and overlapped with their constitutional violations, making them so interrelated that bifurcation would be virtually impossible to implement without undermining Plaintiffs' ability to fairly investigate and prove their claims

Plaintiffs have alleged that as a factual matter, the Towns fail to provide education or training for officers and employees in how to treat people experiencing a mental health crisis, such as Anton, and that this failure resulted in disability-based discrimination in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. The resulting failures by the Officer Defendants to make reasonable accommodations to Anton were a critical component of both the statutory claims and the constitutional violations committed, central to the unraveling of events that occurred from the first moment Officer Webster encountered Anton, having been made aware by X.B. that Anton was a person experiencing a mental health crisis due to his mental health disorder. FAC ¶¶ 74-77. The impacts of this discriminatory conduct continued as Defendants Webster, Manos and Lannon failed to de-escalate and instead responded violently, escalating the encounter with Anton. From the four men chasing Anton down, Officer Webster shattering a glass car window near Anton's head as he hid in a car, Tasing Anton when he tried to escape Webster's violent approach, to forcibly holding Anton in a prone position for six minutes where his breathing would be compromised. FAC ¶¶ 98-135. It is clear that at every opportunity Defendants Webster, Manos and Lannon failed to treat Anton like someone in the throes of a mental health emergency. Therefore, the failure of the entities to adhere to the ADA

and the Rehabilitation Act by training Defendants Webster, Manos and Lannon in how to answer mental health emergencies is intrinsically related to the constitutional violations committed.

Even if the Officer Defendants ultimately were to prevail on their qualified immunity defenses thus avoiding damages liability, the ADA and Rehabilitation Act claims against the Towns stand on their own. For example, if the Court found the officers' conduct did not violate clearly established constitutional standards but nevertheless was discriminatory, in violation of the ADA and Section 504, the Court may rule that the Towns are liable for disability discrimination. For example, in *Waller v. City of Danville ("Waller I")*, the Fourth Circuit remanded the plaintiff's ADA claim for further consideration even after finding that the officer-defendants' use of force was objectively reasonable under the Fourth Amendment. 212 F. App'x 162 (4th Cir. 2006). The court then concluded in *Waller II* that "[T]he failure to train must have caused some violation of law for an action against a municipality to lie," clearly showing the plaintiff could prevail on their federal discrimination claims even if individual constitutional and *Monell* claims failed. *Waller ex rel. Estate of Hunt v. Danville ("Waller II")*, Va., 556 F.3d 171, 177 (4th Cir. 2009). The *Waller* court specifically held that "an adverse determination on the Fourth Amendment claim is not necessarily determinative of the discrimination claims." *Id.* at 172. However, the Fourth Circuit was unable to evaluate the merits of ADA claims in *Waller specifically because the trial court had erroneously limited discovery to the Fourth Amendment issues related to the shooting. Id*. at 173–74. This is just one example as to how erroneous bifurcation in excessive force cases with disability discrimination claims can jeopardize the plaintiffs' ability to obtain necessary evidence to prove discrimination claims and, further, cause inefficiency and delay. *Id*. at 173.

## B. Bifurcation at this stage would jeopardize Plaintiffs' ability to properly investigate and prove their claims.

In claims arising under § 1983, courts recognize the "danger that bifurcation may deprive plaintiffs of their legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action which they have brought into the court, replacing it with a sterile or laboratory atmosphere." *Owensby v. Cincinnati*, 385 F. Supp. 2d 626, 666 (S.D. Ohio 2004) (quotations and citations omitted); *see also Deocampo*, 2007 WL 1614572 at *1 (denying bifurcation, holding that "[p]laintiffs have a right to sue whichever parties they wish, regardless of whether the defendants, or even the court, may think that the inclusion of some defendants may be of little or no practical economic benefit to plaintiff"); *Cunningham v. Gates*, No. 96-2666, 2006 WL 2294877, at *2 (C.D. Cal. Aug. 2, 2006) (denying bifurcation, finding that "bifurcation would waste judicial resources and hinder the understanding of Plaintiffs' theory of the case") (citations omitted).

In this case, Plaintiffs pled allegations against the Town Defendants that are independent, yet intertwined with their claims against the involved officers and supervisory officials. It would be inefficient, as well as patently unfair to Plaintiffs, to deprive them of the opportunity to uncover evidence through discovery of how Defendants' worked together against them. Furthermore, Plaintiffs would be unjustly prevented from developing a significant aspect of their case against the Officer Defendants, as well as against the Towns, given the overlap of the evidence related to claims against both. For example, to the extent that individual officers argue that their actions were in line with departmental policy or consistent with training, evidence related to Town's policies, procedures, and training programs would be critically important to Plaintiffs' ability to prove their case. Without the opportunity to engage in a discovery process that recognizes the interrelatedness of all of the Plaintiffs' claims, Plaintiffs will be unable to

fully and completely develop and present their case. Judicial efficiency is not served by undermining Plaintiffs' ability to investigate and develop evidence about their claims. *Cf. United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1154 (E.D.N.Y. 1992) (rejecting bifurcation in federal RICO case as premature at pleadings stage due to need for Court to better understand intricacies of relationships among defendants).

At the very least, the Court should allow discovery to proceed against all Defendants. A single discovery period will allow the Plaintiffs to uncover, in an efficient manner, evidence on interrelated issues such as Greensboro officials' awareness of Webster's prior use of excessive force against Black people and falsification of information submitted to the State in connection with his police certification; the Towns' policies, training and supervision (or lack thereof) of police employees with respect to de-escalation, duty to intervene, racial and disability discrimination, use of force, and dealing with mental health emergencies; and the Towns' complicity in a conspiracy to cover up official responsibility for Anton's death. Allowing discovery to proceed now is particularly critical here, where most of the individual defendants are no longer in their governmental positions, potentially risking the fading of memories as time goes on. Delaying discovery until the resolution of the claims against the individual officers risks putting the Plaintiffs in the unfair position of litigating claims against the Towns, when the time comes, based on stale and incomplete information. Completing all discovery now will protect against such an unjust outcome and will create less work overall for all parties involved, including the Court.

### C. Rather than avoiding discovery disputes, bifurcation would complicate and prolong discovery and cause duplication of efforts.

Courts granting bifurcation of claims against entities and individual officers in police misconduct litigation do so largely to prevent unnecessary discovery against municipal

defendants, where the liability of the municipality would be entirely derivative of a successful claim against an individual. In this case, however, because the evidence relating to Plaintiffs' disability discrimination and supervisory liability claims substantially overlaps with the evidence relating to the *Monell* claims and the claims against the Officer Defendants, and because Plaintiffs request equitable relief, bifurcation would not alleviate any such burden. Rather, it would result in duplicative discovery efforts, multiple motions phases and conceivably even duplicative trials, thus unnecessarily complicating and prolonging the litigation. The evidence germane to the Title II and 504 claims includes facts relating to the officers' encounter with Anton, as well as evidence of the Towns' training programs, policies, and prior incidents of excessive force against persons experiencing mental health crises. The overlap between this evidence and the constitutional claims makes it unworkable not to litigate them together.

Where, as here, the claims are so intertwined that bifurcation would not limit discovery in the first phase of litigation, courts have held that bifurcation is not appropriate. *See, e.g., Johnson v. Balt. Police Dep't*, -- F. Supp. 3d --, 2020 WL 6728939, at *6 (D. Md. Nov. 16, 2020) (noting with respect to *Brady* claims against individual defendants and a *Monell* claim against the municipality, "If the overlap is minimal, trying the *Brady* claims and the *Monell* claim separately may be more efficient. If the overlap is significant, however, the opposite holds"); *Ott v. City of Milwaukee*, No. 09-C-870, 2010 WL 5095305, at *3 (E.D. Wis. Dec. 8, 2010); *see also Marryshow*, 139 F.R.D. at 320 n.6 ("In a case in which there is substantial overlap of evidence, it may be less, rather than more, efficient to bifurcate the trial."); *Tharpe v. Ill. Nat'l Ins. Co.*, 199 F.R.D. 213, 215 (W.D. Ky. 2001) (explaining that, where issues are "inextricably intertwined," the Court "[could not] fathom" how issues could be bifurcated for discovery and trial).

As noted above, the clear trend in this district – ignored entirely by the Defendants – strongly favors unified trial proceedings over the type of piecemeal, bifurcated process proposed by Defendants in cases involving overlapping evidence relevant to both *Monell* and other claims. *See e.g. Sopp v. Page*, 1:20-cv-3123 (D. Md. January 29, 2021); *Medrano et al. v. Jenkins et al.,* 1:19-cv-02038-RDB (D. Md. July 27, 2020); *Savage v. Pocomoke City*, 1:16-cv-00201-JFM (D. Md. August 19, 2016); *Murphy-Taylor v. Hoffman*, *supra*; *Md. State Conference of NAACP Branches v. Dep't of Md. State Police*, Civil Action No. PWG-98-1098 (D. Md. Oct. 28, 2003).

In *Sopp*, another tragic police killing case strikingly similar in structure to this one, Baltimore County requested bifurcation and a stay of discovery despite the existence of § 1983 claims and claims under the ADA and Rehabilitation Act. Judge Gallagher summarily denied Baltimore County's request based in part on Plaintiffs' argument that evidence related to both types of claims overlapped substantially. Here, as in *Sopp*, there is overlap in the discovery that the Plaintiffs must obtain to prove their Title II and Section 504 claims and the discovery needed to prove their § 1983 claims (and related state torts) against the Officer, Supervisor, and Town Defendants. Specifically, the Plaintiffs have asserted that the Town Defendants: 1) failed to establish adequate practices and procedures and conduct training pertaining to the proper response to mental health crises and 2) failed to properly train, supervise, investigate and impose discipline upon officers. As a result of these failures, the Officer Defendants failed to make reasonable accommodations during their encounter with Anton, who was experiencing a mental health crisis. FAC ¶¶ 282-283.

To prove a violation of Title II and Section 504, Plaintiffs must demonstrate that Anton (1) had a disability; (2) was otherwise qualified to receive the benefits of a public service, program, or activity; and (3) was excluded from participation in or denied the benefits of such

service, program, or activity or otherwise discriminated against on the basis of his disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). Title II's implementing regulations require the public entity to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."[5] 28 C.F.R. § 35.130(b)(7)(i). Courts evaluating failure-to-accommodate claims must consider whether the requested accommodation was reasonable under the circumstances. *Estate of Robert Ethan Saylor v. Regal Cinemas, Inc.*, No. WMN-13-3089, 2016 WL 4721254, at *18–19 (D. Md. Sept. 9, 2016).

Consequently, proof of the claim will necessarily require the Plaintiffs to obtain evidence relating to what the officers knew when initiating or while carrying out the stop, pursuit, detention and use of force against Anton, their conversations with Anton throughout the incident, and their specific actions during the encounter. *See generally Estate of Robert Ethan Saylor*, 2016 WL 4721254, at *17–19 (evaluating evidence relating to plaintiffs' failure-to-accommodate claim against the State of Maryland at the summary judgment stage). This evidence will necessarily overlap with evidence relating to all the claims against the individual Defendants.

---

[5] Plaintiffs use the term "reasonable accommodations" to describe their claim against the Town Defendants under Title II and Section 504 even though the term does not appear in the text of those statutes. The Fourth Circuit has held that Title II and Section 504 require a public entity to make "reasonable accommodations." *See A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 362 (4th Cir. 2008). The term "reasonable accommodation[s] . . . derives from [Title II's] reference to 'reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services.'" *Paulone v. City of Frederick*, 787 F. Supp. 2d 367, 371 (D. Md. 2011) (citing 42 U.S.C. § 12131(2)).

While the Plaintiffs' failure-to-accommodate claim against the Towns will center on facts relating to individual officer actions during the incident, evidence relating to their failure-to-train claim and causation issues under Title II and Section 504 will be substantially similar to evidence supporting their *Monell* claim. A failure-to-train theory under the ADA is analyzed like a *Monell* failure-to-train claim. *See Estate of Robert Ethan Saylor*, 2016 WL 4721254, at *17. To establish liability under this theory, a plaintiff must demonstrate "not only that the defendant failed to implement proper training but that the failure to train amounted to 'deliberate indifference,' which is 'a stringent standard of fault, requiring proof that a State actor disregarded a known or obvious consequence of his action.'" *Id*. at *16 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 297, 410 (1997)).

The Plaintiffs will seek discovery of the Towns' policies and practices regarding encounters with individuals with mental health disabilities, and training regarding the same, in addition to facts relating to prior incidents of police officers encountering and/or using force against people with mental health disabilities. *See Estate of Robert Ethan Saylor*, 2016 WL 4721254, at *17 ("The obviousness of the need for training is typically established by pointing to a pattern of similar violations by untrained employees.").

Given that the Plaintiffs' expected proof of their claims against the Towns are intertwined with their proof against the individual and supervisory defendants, bifurcation will not streamline the case, but rather will create additional work for Plaintiffs, Defendants, and the Court.

### D. Bifurcation of the *Monell* claims would be inappropriate in this case notwithstanding the disability discrimination claims.

It is axiomatic that not every *Monell* claim is suitable for bifurcation. Namely for *Monell* claims in which evidence against the individual actors and evidence against the municipalities overlap, and claims for which liability against the individual officers is not likely to resolve the

question of liability of the municipalities, bifurcation is counterproductive to the goals of economy and efficiency. *See, e.g., Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 1425594 (N.D. Ill. Apr. 20, 2017) (denying request to bifurcate where plaintiff alleged *Monell* claim based on, inter alia, police department's policy of failing to hire, train, and discipline police officers who commit excessive force and individual officers' use of excessive force resulting in death of decedent given the "factual overlap between the *Monell* claims and the constitutional claims . . . ."); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000) (denying bifurcation because, inter alia, the individual officers asserted qualified immunity). This case involves both evidentiary overlap and independent bases for municipal liability.

Here, there will certainly be an overlap of evidence related to the *Monell* claims and claims against the individual officers and supervisors, making bifurcation inefficient and inappropriate. The documents the Plaintiffs will seek in discovery, including policies and procedures of the police departments, and the witnesses who will testify at trial are substantially the same for the *Monell* claim and claims against the individual Defendants. Successive rounds of discovery, motions and trials on matters that substantially overlap will indisputably prolong the litigation and waste time and resources of the Court and the parties.

Moreover, despite Defendants' vehement assertions, this particular *Monell* claim is not an appropriate candidate for bifurcation because, as discussed above, a liability finding on the part of the individual officers will not obviate the need for discovery and a trial against the entities. Indeed, "despite the general bar to municipal liability set out in *Heller*, a situation may arise in which a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality." *Int'l Ground Transp. v. Mayor and City*

*Council Of Ocean City, MD*, 475 F.3d 214, 219 (4th Cir. 2007) (finding when a jury, which has been instructed on a qualified immunity defense as to the individual defendants, returns a general verdict in favor of the individual defendants but against the municipality, the verdict is consistent and liability will lie against the municipality); *see also Deocampo*, 2007 WL 1614572 at *1 ("[T]he court cannot assume, as defendants suggest, that the *Monell* claims will simply go away after the claims against the individual officers are tried. Regardless of whether plaintiffs win or lose on their claims against the officers, there is no assurance that plaintiffs would voluntarily abandon their claims against the city, and there can be no showing at this stage of the proceedings that the city would be entitled to judgment as a matter of law."). In *Monell* cases such as this, where an officer asserts an affirmative defense like qualified immunity on a damages claim, a jury's finding in favor of the officer does not necessarily mean the officer's actions were constitutional. Moreover, immunity is irrelevant to Plaintiffs' equitable claims, which are a significant part of a case like this seeking police reform and accountability. Consequently, bifurcation of the *Monell* claims in this case would not serve the same purpose as it would in a *Monell* case focused exclusively on damages or where the Defendants were not raising qualified immunity as a key defense. *See Bost v. Wexford Health Sources, Inc.,* 2017 WL 1862486, at *25 (D. Md. April 15, 2020) (finding that bifurcation of *Monell* claim was appropriate, but relying, in part, on the fact that defendants had *not* asserted qualified immunity in making the determination). Put another way, whether or not the Plaintiffs overcome the individual Defendants' qualified immunity defenses on their damages claims, bifurcation would divide this case into two separate matters, forcing Plaintiffs to litigate two trials with substantially overlapping evidence, causing duplication of efforts for the parties and the Court.

## II. THE DEFENDANTS' CONCERNS REGARDING PREJUDICE AT TRIAL ARE PREMATURE AND OVERSTATED

Bifurcating the *Monell* claims at the outset of this case—before the parties have exchanged any discovery—on grounds that Defendants conceivably might suffer prejudice potentially years from now *at trial* is premature, ignores the myriad tools a court may utilize to limit the risk of unfair prejudice, and will plainly and immediately result in unfair prejudice to Plaintiffs.

As this case has just begun, trial is not on the horizon. The Court has not even entered a scheduling order. Thus, beyond all the previously stated reasons why bifurcation of the claims against the entity Defendants is unworkable in this case, it is simply too early for the Court to determine that bifurcation is necessary to avoid any distant risk of prejudice to Defendants. *See Johnson*, 2020 WL 6728939, at *7 (denying defendants' request for bifurcation before the start of discovery and stating "it is simply too soon to say" whether bifurcation of the *Monell* claim would conserve resources, streamline discovery, and prevent unfair prejudice). Like Judge Gallagher in *Sopp* and Judge Bennett in *Medrano*, courts in other districts have been swift in rejecting such early requests for bifurcation. *See, e.g., Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 1425594, at *4 (N.D. Ill. Apr. 20, 2017) (denying request to bifurcate where case was in the early stages of discovery); *Morgan v. City of Rockville*, No. PWG-13-1394, 2013 WL 6898494 (D. Md. Dec. 30, 2013) (describing request for bifurcation prior to Rule 26(f) meet and confer as "quite premature").

To the extent Defendants characterize as "unfair prejudice" all the relevant evidence bearing on the Towns' liability for Anton's death—including that concerning Webster's long pattern of excessive force against Black people, Town officials' awareness of his alarming record, and the Towns' and supervisors' involvement in a conspiracy to cover up official

responsibility for Anton's death—their bifurcation motion is plainly an improper attempt to prevent Plaintiffs from pursuing their claims. If, following discovery, the Court becomes concerned about the risk of unfair prejudice that may result to certain Defendants due to damaging evidence introduced by Plaintiffs about other Defendants, the Rules of Evidence, limiting instructions, and motions *in limine* are reliable tools that can limit any unjustified risk of prejudice. Federal Rule of Evidence 403 serves a gatekeeping function that allows the Court to ensure that Defendants do not suffer unfair prejudice by the presentation of certain evidence. Moreover, a limiting instruction can both prevent and cure any potential prejudice, without the additional burdens and delays of bifurcation. *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 480 (S.D.N.Y. 2009) ("Any spillover prejudice to the individual officers that may be caused by the admission of Rule 404(b) evidence [at trial] to establish the *Monell* claim [pertaining to the Individual Defendants] could be cured by limiting instructions.") (alterations in original and citation omitted)). And motions *in limine* provide the Court an opportunity to strike or limit evidence before trial. *Estate of Loury by Hudson*, 2017 WL 1425594, at *4 (including motions *in limine* in list of ways to mitigate any potential prejudice).

As the Supreme Court has counseled, courts "must assume that juries for the most part understand and faithfully follow instructions." *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) (citation omitted). In complex, multi-defendant criminal trials, limiting instructions routinely address unfair prejudice far worse than what the Defendants allege may result here. If limiting instructions work in the criminal context where the consequences of unfair prejudice result in the loss of liberty, then limiting instructions should be afforded at least the same value in the civil context where the consequences of unfair prejudice are less severe. Additionally, a

limiting instruction, crafted shortly before trial when the facts are more fully developed, can better address any potential unfair prejudice.

Finally, forcing the Plaintiffs to try almost the same case twice is unfairly prejudicial to the Plaintiffs. Because Plaintiffs will litigate the disability discrimination claims regardless of the outcome of their *Monell* claims, it is unfairly prejudicial to delay discovery and then later require them to try to prove the same operative set of facts in a second trial. More importantly, not only will Plaintiffs be forced to litigate the same case twice, but their ability to fully develop the theories of liability in both instances will be significantly hampered by bifurcation and a stay of discovery at this juncture. The claims are too interconnected, involving discovery of the same documents and testimony from the same witnesses, for the Plaintiffs to adequately pursue either of the claims alone. Accordingly, bifurcation will both undermine and needlessly delay Plaintiffs' efforts to seek justice for Anton's tragic and untimely death.

<u>**CONCLUSION**</u>

Because Defendants have failed to meet their burden of proving that bifurcation is warranted on the facts of this case, the Court should deny their motion in its entirety.

Respectfully Submitted,

*/s/ Kenneth Ravenell, Esq.*
Kenneth Ravenell, Bar No. 48969
Ravenell Law
711 St. Paul Street
Baltimore, Maryland 21202
PH: 410-878-0705 / F: 410-834-5488
E: kravenell@kravenelllaw.com

*/s/ Tomeka G. Church, Esq.*
Tomeka G. Church, Bar No. 25311
Law Office of Tomeka G. Church, LLC
711 St. Paul Street
Baltimore, MD 21202

PH: 410-878-0705
E: tchurch@churchlawfirm.com

*/s/ Leslie D. Hershfield, Esq.*
Leslie D. Hershfield, Bar No. 08255
Schulman, Hershfield & Gilden, P.A.
One E. Pratt Street, Suite 904
Baltimore, Maryland 21202
P: 410-332-0850 / F: 410-332-0866
E: lhershfield@shg-legal.com

*/s/ Rene C. Swafford, Esq.*
Rene C. Swafford, Bar No. 26309
Law Office of Rene C. Swafford, LLC
P.O. Box 392
Greensboro, Maryland 21639
P: 410-482-4794
E: rswaffordster@gmail.com

*/s/ Deborah A. Jeon, Esq.*
Deborah A. Jeon, Bar No. 06905
Sonia Kumar, Bar No. 07196
ACLU of Maryland
3600 Clipper Mill Road, Suite 350
Baltimore, Maryland 21211
P: 410-889-8550
E: jeon@aclu-md.org
E: kumar@aclu-md.org

*/s/ John A. Freedman*
John A. Freedman, D. Md. No. 20276
Jayce Born (*pro hac forthcoming*)
Florence Bryan (*pro hac forthcoming*)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, N.W.
Washington, DC 20001
P: 202-942-5000
E: john.freedman@arnoldporter.com
E: jayce.born@arnoldporter.com
E. Florence.bryan@arnoldporter.com

Ryan D. Budhu (*pro hac forthcoming*)
Joseph P. Klemme (*pro hac forthcoming*)
John F. Mezzanote, Jr. (*pro hac forthcoming*)
Arnold & Porter Kaye Scholer LLP
250 West 55th Street

New York, NY  10019-9710
P: 212-836-8000
E: ryan.budhu@arnoldporter.com
E: joseph.klemme@arnoldporter.com
E: john.mezzanote@arnoldporter.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2021, a copy of the foregoing memorandum of law was electronically filed in this case through the ECF system and served electronically upon counsel of record.

*/s/ John A. Freedman*
John A. Freedman