IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JENNELL BLACK, *et al.* | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:20-cv-03644-CCB |
| THOMAS WEBSTER, IV, *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF DEFENDANTS RUSSELL ALEXANDER, MD; VICTOR WEEDN, MD; DAVID FOWLER, MB.ChB.; AND STATE OF MARYLAND'S <u>MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>

Defendants Russell Alexander, MD; Victor Weedn, MD; David Fowler, MB.ChB.; and State of Maryland (collectively, "Defendants"), through undersigned counsel, hereby submit this memorandum in support of their motion to dismiss Plaintiff's Amended Complaint.

## <u>INTRODUCTION</u>

Plaintiffs Jennell Black, Antone Black, Katyra Boyce, and Coalition for Justice for Anton Black's (collectively, "Plaintiffs") suit arises from the death of Anton Black on September 15, 2018 allegedly at the hands of police officers from three different jurisdictions on Maryland's Eastern Shore. (Doc. No. 38 at ¶ 1.) Jennell Black and Antone Black are the surviving mother and father of Anton Black, and they sue in their individual capacities and as personal representatives of Anton Black's estate. (Doc. No. 38 at ¶¶ 7-8.) Katyra Boyce sues as next friend of W.B., who is Anton Black's child. (*Id.* at ¶ 9.) The final Plaintiff, Coalition for Justice for

Anton Black ("CJAB"), is a membership organization "with the mission of promoting accountability for law enforcement misconduct and preventing police violence on the Eastern Shore." (*Id*. at ¶ 10.) It has several dozen members, including Anton Black's immediate family members. (*Id*.)

Dr. Alexander is an Assistant Medical Examiner who performed the autopsy on and determined the cause of death for Mr. Black. (*Id*. at ¶ 21.) Dr. Fowler was the Chief Medical Examiner at the time of Mr. Black's autopsy and was responsible for ensuring the accuracy and integrity of Mr. Black's autopsy. (*Id*. at ¶ 23.) Dr. Weedn is the current Chief Medical Examiner. (*Id*. at ¶ 22.) Plaintiffs sue Dr. Alexander in individual and official capacities, Dr. Fowler in his individual capacity, and Dr. Weedn in his official capacity. (*Id*. at ¶¶ 21-23.)

Plaintiffs' Complaint contains 74 pages of allegations, largely against the various officers and governmental entities who they assert are responsible for Anton Black's death. Most of the allegations will not be included here because they do not constitute a short and plain statement of the case, as required by Federal Rule of Civil Procedure 8, and because they do not directly impact the claims against the State and Drs. Alexander, Fowler, and Weedn.

As a general matter, Plaintiffs contend that the State of Maryland, through the Office of the Chief Medical Examiner ("OCME"), conspired with the police for the purpose of concealing the State and officers' alleged responsibility for Anton Black's death. (*Id*. at ¶ 3.) Plaintiffs initially find fault with OCME not releasing its findings until it had all of the analysis done, claiming that OCME did not release its findings regarding Anton Black's death until Governor

Hogan "intervened." (*Id*.) In particular, they assert that OCME's autopsy was conducted and a preliminary report was completed on September 16, 2018. The neuropathology report was signed on October 24, 2018, and the cardiology report was dated November 1, 2018. (*Id*. at ¶ 171.) Plaintiffs assert that OCME failed to release the September 20, 2018 toxicology report because it contradicted the police's narrative that Mr. Black had drugs in its system, implying that OCME had a duty to correct others' false reports of laced drug use. (*Id*. at ¶ 3, 171.) The toxicology reports, however, are protected from release. COMAR § 10.35.01.14A. A supplemental report dated January 23, 2019 confirmed that Mr. Black did not have drugs in his system. (*Id*. at ¶ 171)

The autopsy report itself opined, according to Plaintiffs, that Mr. Black's bipolar disorder was a contributing cause of death. (*Id*. at ¶ 173.) Plaintiffs then jump to the conclusion that OCME was "plainly improperly influenced by law enforcement." (*Id*. at ¶ 171.) A Maryland State Police report that was supplemental to the autopsy report reflects a conversation between Officer Clark and Dr. Alexander wherein Dr. Alexander purportedly said, "Black's neck looked good." (*Id*.) From this, Plaintiffs conclude that both OCME and the Maryland State Police "wished to rule out evidence of physical violence and asphyxiation by police." (*Id*.) A few paragraphs later, however, they concede that the report notes "43 blunt force trauma wounds" and it "acknowledges that 'the stress of the struggle contributed to his death'." (*Id*. at ¶ 175.)

Plaintiffs believe that police caused Mr. Black's death by inhibiting his ability to breathe and creating "positional asphyxiation." (*Id*. at ¶ 172.) They provide a sentence fragment, allegedly from the medical examiner's report, that opined "[a] significant contributing condition was bipolar

disorder." (*Id*. at ¶ 173.) The OCME report also posited that Mr. Black's heart had failed, attributing it to "anomalous right coronary artery and myocardial tunnelling of the left anterior descending coronary artery," but Plaintiffs contend that is incorrect. (*Id*. at ¶ 174.) Despite noting that there were 43 blunt force trauma wounds in the OCME report, Plaintiffs claim that the report does not acknowledge the force used by police or that an officer purportedly laid on Mr. Black for six minutes. (*Id*. at ¶ 175.) In the end, OCME concluded that "no evidence was found that restraint by law enforcement directly caused or significantly contributed to the decedent's death; in particular no evidence was found that restraint led to the decedent being asphyxiated." (*Id*. at ¶ 176.) The cause of death, according to Plaintiffs, should have been determined to be the police officers who allegedly chased, tased, pinned Mr. Black for six minutes until he stopped breathing and died. (*Id*. at ¶¶ 3, 181-89.) They believe that OCME's conclusion was contrary to considerations published by the National Association of Medical Examiners in 2017. (*Id*. at ¶ 189.) Plaintiffs believe that OCME has disregarded principles of forensic pathology in the past when coming to the conclusions on cause and manner of death in the cases of Tyrone West and Tawon Boyd, cases which Plaintiffs assert were police-involved deaths. (*Id*. at ¶¶ 191-92.) They further assert that the families of both men were "forced" to obtain the services of private forensic pathologists who determined that they had died of "positional asphyxia," the same cause of death they attribute to Mr. Black's death. (*Id*. at ¶¶ 191-92.)

Plaintiffs surmise that OCME conspired with police to create a false narrative rather than view or rely on what they think is the best evidence of what happened. (*Id*. at ¶ 177.) They assert

this even though they acknowledge that in "many cases there is little or no physical evidence when a person dies of mechanical or positional asphyxia." (*Id*. at ¶ 177.) They also contend that it is "extremely unlikely" but not impossible that Mr. Black died of "anomalous right coronary artery and myocardial tunnelling of the left anterior descending coronary artery." (*Id*. at ¶ 179.) In fact, they assert that Dr. Alexander should merely have noted that anomalous right coronary artery was present rather than it being the cause of death. (*Id*. at ¶ 181.) At bottom, Plaintiffs contend that OCME's findings ignored evidence, were patently unreasonable, and were used by the State's Attorney's Office to decline to press charges against certain police officers for Anton Black's death or to convene a grand jury. (*Id*. at ¶¶ 3, 194.) This, the allege, burdens their ability to mount a civil action because of the cost associated with hiring "multiple experts to disprove the Medical Examiner's misrepresentations." (*Id*. at 195.) They do not contend how they would obtain OCME's expert testimony at depositions and trial in a civil action free of charge.

Plaintiffs' Amended Complaint contains 14 counts, but only 4 are levied against Defendants. Count IV is brought by all Plaintiffs against Defendants Alexander, Fowler, and Weedn, and alleges a violation of their right to access the courts and legal redress under the First and Fourteenth Amendments to the U.S. Constitution and Articles 19, 20, and 40 of the Maryland Declaration of Rights. (*Id*. at ¶¶ 240-46.) Count X is brought by Plaintiffs against the State of Maryland for alleged violation of Anton Black's rights under Title II of the Americans with Disabilities Act. (*Id*. at ¶¶ 277-87.) Count XI is brought by Plaintiffs against the State of Maryland for alleged violations of Section 504 of the Rehabilitation Act of 1973. (*Id*. at ¶¶ 288-

300.)  All Plaintiffs bring Count XIII against all Defendants for civil conspiracy to violate their rights to due process and access to the Courts under Articles 19, 24, and 40 of the Maryland Declaration of Rights.  (*Id.* at ¶¶ 308-14.)  Plaintiffs seek compensatory, punitive, declaratory, and injunctive relief.  They also seek attorneys' fees.

Defendants ask that the counts against them be dismissed with prejudice.

## STANDARD OF REVIEW

A Federal Rule of Civil Procedure Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  The Court must presume the well pleaded allegations of a complaint to be true, *Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977), but it is not bound by a plaintiff's legal conclusions.  *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Furthermore, the Court need not accept a complaint's "unwarranted inferences, unreasonable conclusions, or arguments."  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  Similarly, it is not bound by a plaintiff's legal conclusions.  *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

A successful complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted) (citing Fed. R. Civ. Proc. 8).  In other words, a plaintiff must plead sufficient "facts to satisfy the elements of [the] cause of action…."  *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015).  Accordingly, "[f]actual allegations must be enough

to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). Such factual allegations must state a claim for relief that is "plausible on its face" rather than just a mere possibility. *Id*. at 570. In assessing plausibility, a court must "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In addition to the allegations, the Court may also consider documents incorporated into the complaint or attached to a motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). An integral document is one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

## ARGUMENT

### I. Count IV: Plaintiffs Have Failed to Plead that Defendants Unconstitutionally Infringed Upon Plaintiffs' Access to the Courts/Legal Redress Rights.

All Plaintiffs sue Drs. Alexander, Fowler, and Weedn for allegedly violating their access to courts/legal redress rights under the First and Fourteenth Amendments to the United States Constitution as well as Articles 19, 24, and 40 of the Maryland Declaration of Rights. (Doc. No. 38 at ¶¶ 240-46.) It appears that Plaintiffs bring their claims for alleged violations of Articles 19, 24, and 40 of the Maryland Declaration of Rights pursuant to 42 U.S.C. § 1983. (Doc. No. 38 at

¶ 246.) On its face, § 1983 creates a cause of action for a "deprivation of any rights, privileges or immunities secured by the Constitution and laws." This requires the violation of a federal right or a federal law. *Carey v. Throwe*, 957 F.3d 468, 479 (4th Cir. 2020). Violations of a state constitution or state laws are not cognizable under § 1983. *See Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995); *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995); *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988). Accordingly, to the extent that Plaintiffs bring their Article 19, 24, and 40 claims under § 1983, they must be dismissed. They are state constitutional torts which a federal court may hear only pursuant to its supplemental jurisdiction. See *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing 28 U.S.C. § 1367).

## A. First and Fourteenth Amendment.

There are two general types of federal access to court claims under the U.S. Constitution. In the first, "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 412-13 (2002). In these types of cases, some official action is denying the opportunity to litigate for a person or class of persons. *Id*. at 413. The aim of such an action is to remove the restriction to allow the plaintiff to pursue a claim. *Id*. The second category of cases concerns those that cannot now be tried, *i.e.*, the opportunity to litigate has been lost. *Id*. at 413-14. The purpose of this second type of claim is not to remove a barrier so as to allow the underlying claims to go forward; instead, it seeks judgement on the access to court claim itself. *Id*. at 414. Whether the source of the claim is the First Amendment, the Fourteenth Amendment, or some other source, the claim is ancillary to the

underlying substantive claim, without which the Plaintiff cannot have suffered injury through access to the court.[1]  *Id.* at 415 and n.12.  It is a requirement of either type that a plaintiff sufficiently describe the underlying claims that cannot be brought.  *Id.* at 417-18.

Plaintiffs have not pleaded any such civil claims that could have been brought if not for the medical examiner's opinion.  In fact, their Complaint does just the opposite.  It actually brings substantive claims against various individuals, officers, and governmental entities that Plaintiffs seek to hold civilly responsible for Anton Black's death, such as: Count I (wrongful death); Count II (survival action for the events leading up to Anton Black's death); Count III (Fourth and Fourteenth Amendment excessive force claims); Count V (Article 24 of the Maryland Declaration of Rights excessive force claim); Count VI (Article 26 of the Maryland Declaration of Rights excessive force and deprivation of liberty claims); Count VII (battery); Count VIII (negligent hiring, retention, training, certification, and supervision; Count IX (negligent retention, training, and supervision); Count X (ADA Title II); Count XI (§ 504 Rehabilitation Act); Count XII (intentional infliction of emotional distress); Count XIII (civil conspiracy); and Count XIV (equal protection).  The fact that they bring these claims destroys their access to court claim.  *Pollard v. Pollard*, 325 Fed. Appx. 270 (4th Cir. 2009) (explaining that the access to court claim would fail because plaintiff's "wrongful death action is pending in state court and therefore she cannot

---

[1] To the extent that Plaintiffs rely on the Fourteenth Amendment, it would require that OCME frustrate their attempts at litigation by concealing facts.  *Iko v. Galley*, 2006 WL 8449023, at * 7 (D. Md. June 16, 2006) (citing *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984).  Plaintiffs instead take issue with the medical examiner's opinions.  The underlying evidence remains in place.  Accordingly, a Fourteenth Amendment access to court claim would fail for this reason as well.

credibly assert that Defendants' actions foreclosed her ability to file suit in state court"); *Snider v. Alvarez*, Civ. No. 18-801, 2020 WL 6395499, at *21 (M.D. Pa. Nov. 2, 2020) (denying an access to court claim, in part, because the plaintiff had not pleaded the litigating opportunity that he had lost due to some state action and because he was also actively litigating his substantive claims). Because Plaintiffs have not identified and sufficiently pleaded any civil actions that they have been prevented from bringing due to the conclusions in the medical examiner's report, Count IV must be dismissed as to Defendants Dr. Alexander, Dr. Fowler, and Dr. Weedn.

Plaintiffs allege that they have had to incur expenses associated with hiring expert forensic pathologists due to the opinions rendered by Drs. Alexander and Fowler in Mr. Black's autopsy report. (Doc. No. 38 at ¶¶ 195, 244, 313.) Forensic pathology is obviously beyond the ken of the average factfinder, and as Plaintiffs, the burden of persuasion would be on them to establish the cause and manner of death in a civil action through expert testimony. Even if OCME had provided an autopsy report with the exact cause and manner of death desired by Plaintiffs, they do not allege how they could escape paying expert witness fees in a civil case against the other defendants such as police and municipalities. In that scenario, assuming that Plaintiffs were successful in establishing the Assistant Medical Examiner and Chief Medical Examiner as hybrid fact/expert witnesses, each would be entitled to reasonable expert fees for deposition and trial testimony. *See* Local Rule 104.11(b)(setting reasonable expert fees for treating physicians); *Yazdani v Pan-American Life Ins. Co.*, Civ. No. S-02-1418, 2002 WL 32098288, at *2 (D. Md. Nov. 25, 2002)(allowing hybrid fact/expert witnesses to receive reasonable expert fees). Accordingly, the

assertion that Plaintiffs are being unduly burdened in bringing their civil claims by needing to hire expert witnesses is not meritorious, even if that assertion were the appropriate basis of a First or Fourteenth Amendment claim.

To the extent that Plaintiffs assert that they have been denied access to the courts insofar as certain individuals have not been prosecuted criminally due to the opinions in the medical examiner's report, it is unclear why they believe the First or the Fourteenth Amendment gives family members and a membership organization that right. Plaintiffs assert that the State's Attorney has refused to prosecute or convene a grand jury. (Doc. No. 38 at ¶ 245.) It is wholly speculative as to what the State's Attorney would do if the medical examiner's conclusions changed. Moreover, to the extent that Plaintiffs believe that they have a right to have crimes prosecuted, this Court has stated previously that it "does not know of any right afforded by either the Constitution or laws of the United States to private persons to compel a state to prosecute criminal activity." *Sellner v. Panagoulis*, 565 F. Supp. 238, 250 (D. Md. 1982); see *also Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988)(explaining that neither the public at large nor the victim of a crime has the right to have a person criminally prosecuted). Accordingly, there is not a viable access to court claim to have individuals prosecuted.

Plaintiffs' failure to utilize or cause to be utilized an available administrative process further undercuts their claims. Unless a death is ruled to be a homicide, a person in interest can ask the medical examiner "to correct findings and conclusions on the cause and manner of death recorded on a certificate of death … within 60 days after the medical examiner files those findings

and conclusions."[2]  Md. Code Ann., Health-Gen. § 5-310(d)(2)(i)(emphasis added); *see also* COMAR 10.35.01.13A.  Manner of death "refers to how the death occurred, the circumstances surrounding the decedent's death, *e.g.*, whether the death was a result of a suicide, homicide, accident, or natural causes."  *Sippio v. State*, 350 Md. 633, 643, 714 A.2d 864, 869 (1998).  Cause of death means "the actual process which produces the death[,]" *e.g.*, a gunshot.  *Id*.  The chief medical examiner then has 60 days to issue written notice of the action taken.  COMAR 10.35.01.13D. Thereafter, a person in interest may petition the Secretary of Health for review of certain findings.  In particular, the statute allows the following for review of cause of death findings:

> If the Chief Medical Examiner denies the request of a person in interest to correct findings and conclusions on the cause of death, the person in interest may appeal the denial to the Secretary, who shall refer the matter to the Office of Administrative Hearings.  A contested case hearing under this paragraph shall be a hearing both on the denial and on the establishment of the findings and conclusions on the cause of death.

Md. Code Ann., Health Gen. § 5-310(d)(2)(ii); *see also* COMAR 10.35.01.13E ("If the Chief Medical Examiner denies the request to correct findings and conclusions on the cause of death, the person in interest may appeal the denial in writing within 15 days to the Secretary.").  Manner of death findings may be reviewed directly by the Secretary of Health.  Md. Code Ann., Health-Gen. § 5-310(d)(2)(vi).  If still unsatisfied, a person in interest may seek judicial review in a

---

[2]  Md. Code Ann., Health-Gen. § 5-310(d)(2)(i) says that a "person in interest" is defined in Md. Code Ann., Gen. Prov. § 4-101(e).    Section 4-101(e) of the General Provisions Articles defines the term "new media," so the reference to § 4-101(e) must be in error.  Section § 4-101(g)(3) of the General Provisions Article does define "person in interest," however, as follows:  "As to requests for correction of certificates of death under § 5-310(d)(2) of the Health - General Article, the spouse, adult child, parent, adult sibling, grandparent, or guardian of the person of the deceased at the time of the deceased's death."

Maryland circuit court.  *Id*. § 5-310(d)(2)(v).  The Office of the Chief Medical Examiner has no record of receiving a request to change Anton Black's manner or cause of death.  (Affidavit of Michael Eagle, at ¶ 5, attached hereto as Exhibit 1.)  Therefore, Plaintiffs' access to court claims fail because they failed to avail themselves of a legal remedy to obtain the relief they were seeking.

## B.  Article 19.

Article 19 of the Maryland Declaration of Rights does not have a counterpart in the federal Constitution.  *Piselli v. 75th Street Medical*, 371 Md. 188, 204-05, 808 A.2d 508, 517-18 (2002). It provides:

> That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

The provision protects two rights: "(1) a right to a remedy for an injury to one's person or property; (2) a right of access to the courts."  *Piselli*, 371 Md. at 205, 808 A.2d at 518.  Article 19 does not, however, guarantee access to the courts.  *Murphy v. Edmonds*, 325 Md. 342, 365, 601 A.2d 102, 113 (1992).  Rather, it prohibits unreasonable restrictions on access to remedies or the courts and does so by considering "whether abolition of a common law remedy and substitution of a statutory remedy was reasonable."  *Jackson v. Dackman Co.*, 422 Md. 357, 380, 30 A.3d 854, 867 (2011). There is no such allegation in the Complaint and, therefore, Article 19 of the Maryland Declaration Rights is not a viable cause of action for Plaintiffs.  Even if Article 19 did provide Plaintiffs with a claim regarding access to the courts similar to the First and Fourteenth Amendments to the U.S. Constitution, it fails for the same reason stated above.

### C. Article 24.

Article 24 is generally construed *in pari materia* with the Fourteenth Amendment. *Doe v. Dep't of Public Safety & Correctional Servs.*, 185 Md. App. 625, 635-36, 971 A.2d 975, 982 (2009). Defendants have demonstrated above that Plaintiffs have failed to state Fourteenth Amendment claims, so their Article 24 concerns in Count IV should therefore be dismissed for failure to state a claim as well.

### D. Article 40.

Article 40 of the Maryland Declaration of Rights provides:

> That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege.

These provisions are "coextensive" with those provided by the First Amendment to the U.S. Constitution. *Newell v. Runnels*, 407 Md. 578, 608, 967 A.2d 729, 746 (2009). Article 40 is therefore interpreted *in pari materia* with the First Amendment. *The Pack Shack, Inc. v. Howard County*, 377 Md. 55, 64 n.3, 832 A.2d 170, 176 (2003). Because Plaintiffs have not stated a claim for a violation of the First Amendment, they also have not stated a claim for a violation of Article 40 of the Maryland Declaration of Rights.

## II. Defendants Alexander, Fowler, and Weedn Have Qualified Immunity to Plaintiffs' Federal Constitutional Claims in Count IV.

A defendant is entitled to qualified immunity if he had no knowledge that his actions or inactions could be considered a violation of the plaintiff's clearly established statutory or constitutional rights. *See Taylor v. Freeman*, 34 F.3d. 266, 273 (4th Cir. 1994). The U.S. Supreme

Court held that in resolving government officials' qualified immunity claims, courts need not first determine whether facts alleged or shown by a plaintiff make out a violation of a constitutional right, before determining whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Requiring a determination of the constitutional question first can run counter to the general rule of constitutional avoidance. *Id.* at 241. Recent courts have, in fact, elected to address only the "clearly established" prong of the qualified immunity analysis. *Reichle v. Howards*, 566 U.S. 658, 663 (2012); *Booker v. South Carolina Department of Corrections*, 855 F.3d 533, 538 (4th Cir. 2017); *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (stating a court is permitted to "skip ahead to the question of whether the law clearly established that the officer's conduct was unlawful in the circumstances of this case….").

In *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018), the Supreme Court granted qualified immunity to the defendants and explained that "clearly established" means that, at the time of the official's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful, placing the conduct "beyond debate." *Id.* at 589 (citations omitted). The *Wesby* court went on to add that "[i]t is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 589-90 (citations omitted). Moreover, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017)(citations omitted). Qualified immunity

thus protects public officials not only from liability, but from the vexations of trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

As established above in Section I, Plaintiffs' allegations do not demonstrate a violation of Plaintiff's constitutional rights. Even if there were a violation of their constitutional rights, such rights are not clearly established. The undersigned has been unable to locate cases where a medical examiner's opinion on the cause or manner of death resulted in an individual's federal constitutional access to court rights being violated. As such, Defendants Alexander, Fowler, and Weedn have qualified immunity to Plaintiff's federal constitutional claims in Count IV.

III.    **All Plaintiffs Have Failed to State a Claim for Alleged Violations of Title II of the Americans with Disabilities Act (Count X) and Section 504 of the Rehabilitation Act (Count XI).**

A. **Jennell Black and Antone Black, as Personal Representatives of Anton Black's Estate, Cannot Bring a Survival Action for Disability Discrimination.**

Anton Black's estate incorrectly brings claims for disability discrimination against the State under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act for actions that Dr. Alexander and Dr. Fowler allegedly took after Mr. Black's death. Assuming without conceding that an ADA or Rehabilitation Act claim can survive a person's death, *see Rogers v. Dep't of Health & Environmental Control*, 174 F.3d 431, 433-34 (4th Cir. 1999) (acknowledging Congress's directive to apply a coordinated approach when construing the Rehabilitation Act and the ADA where possible); *Guenther v. Griffin Construction Co., Inc.*, 846 F.3d 979 (8th Cir. 2017) (applying federal common law to determine the

survivability of an ADA claim); *Green v. City of Welch*, 467 F. Supp. 2d 656, 665-67 (S.D. W. Va. 2006) (applying State law rather than federal common law as to the survivability of an ADA claim, but recognizing a split of authority as to survivability); *Flaum v. Gloucester Lanes*, 2015 WL 364603 (E.D. Va. January 27, 2015) (applying federal common law to determine whether an ADA claim survives an individual's death), a personal representative of an estate may only "prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted…" subject to certain exceptions not relevant here. Md. Code Ann., Est. & Tr. § 7-401(y)(1). Such a survival action is provided for in Maryland statute in Md. Code Ann., Cts. & Jud. Proc. § 6-401(a). The role of an estate's personal representative in litigation, therefore, is to bring "an action that the decedent could have brought had he or she not died." *State v. Copes*, 175 Md. App. 351, 364, 927 A.2d 426, 434 (2007) (quoting *Lopez v. Maryland State Highway Administration*, 327 Md. 486, 490, 610 A.2d 778, 780 (1992)); *see also Jones v. Prince George's County*, 541 F. Supp. 2d 761, 764 (D. Md. 2008). Because a survival action arises from harm allegedly suffered by the deceased before he or she died, damages are measured by harm to that person. *Copes*, 175 Md. App. at 364, 927 A.2d at 434. As a result, the personal representative is the "posthumous agent" of the deceased who "steps into the shoes of the deceased." *Id.*; *see also ACandS, Inc. v. Asner*, 104 Md. App. 608, 644-45, 657 A.2d 379, 397 (1995), *rev'd on other grounds*, 344 Md. 155, 686 A.2d 250 (1996).

Title II of the Americans with Disabilities Act provides, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides, in relevant part, "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C. § 794. Plaintiffs' Amended Complaint contains no allegations that the State of Maryland, through the medical examiner's actions, discriminated against Anton Black before his death. (*See* Doc. No. 38.) Instead, they allege entirely posthumous misconduct in composing his autopsy report and allegedly opining that Mr. Black's bipolar disorder was a "significant contributing cause" of his death rather than excessive force by the police. (Doc. No. 38 at ¶ 284.) Therefore, Mr. Black's parents, in their capacities as personal representatives of his estate, may not bring actions for disabilities discrimination under the ADA or the Rehabilitation Act.

### B. Plaintiffs Fail to State a Claim in Counts X and XI Because They Do Not Adequately Allege That They Were Disabled or That OCME Made the Autopsy Findings Because of Their Purported Disabilities.

Title II of the Americans with Disabilities Act protects individuals with a disability from certain discrimination. 42 U.S.C. § 12132. The Rehabilitation Act similarly protects "qualified individual(s) with a disability." 29 U.S.C. § 794. The Complaint contains no factual allegations

that any of the Plaintiffs are a "qualified individual with a disability" for purposes of the ADA or the Rehabilitation Act. Rather, they allege that Plaintiff CJAB has "members who also have qualified disabilities under the ADA." (Doc. No. 38 at ¶ 287.) In order to survive a motion to dismiss, a Plaintiff must allege sufficient facts to show that: 1.) he or she has a disability; 2.) he or she is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he or she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Baird v. Rose*, 192 F.3d 462, 467-70 (4th Cir. 1999). Plaintiffs provide no details regarding their alleged disabilities, so their allegations regarding the first element of the claim amount to nothing more than a legal conclusion. The third element also has not been alleged with sufficient facts to even establish what, if anything, OCME knew about any purported disabilities of the individual Plaintiffs or CJAB's members. In fact, Katyra Boyce, next friend of Plaintiff W.B. was still six months pregnant at the time of Mr. Black's death. (Doc. No. 38 at ¶ 155.) Without alleging facts describing OCME' purported knowledge of a disability, Plaintiffs cannot establish causation. Accordingly, Counts X and XI must be dismissed as to the State for failure to state a claim.

## IV. The State Has Eleventh Amendment Immunity to Count XIII (Civil Conspiracy) and State Constitutional Torts in Counts IV.

Immunity to federal court jurisdiction under the Eleventh Amendment to the United States Constitution has not been waived to Count XIII against the State or the portions of Count IV and alleging violations of Article 19, 24, or 40 of the Maryland Declaration of Rights. Under the

Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984). This immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). The Maryland Department of Health is a "principal department of the State government," Md. Code Ann., Health-Gen. § 2-101 (LexisNexis 2017), and as an "arm of the state is protected by [Eleventh Amendment] immunity." *Keller v. Prince George's County*, 923 F.2d 30, 32 (4th Cir. 1991) (citation omitted); *see also Westinghouse Electric Corp. v. West Virginia Dep't of Highways*, 845 F.2d 468, 469 (4th Cir. 1988) (holding a claim against a department of state government "is, for eleventh amendment purposes, properly considered one against the state itself"). There is a Postmortem Examiner's Commission within MDH which employs the Chief Medical Examiner, assistant medical examiners, and other staff to operate the commission and carry out autopsies. Md. Code Ann., Health Gen. §§ 5-302, 5-305. Accordingly, the actions of the medical examiners are State actions.

The U.S. Supreme Court has established a "stringent" test for determining whether a State has waived its Eleventh Amendment immunity and consented to be sued in federal court. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985). Under this test, a State's consent to suit must be "unequivocally expressed," *Pennhurst*, 465 U.S. at 99, through "express language or by such overwhelming implication from the text as [will] leave no room for any other

reasonable construction." *Atascadero*, 473 U.S. at 239-40. Even general consent to suit statutes are insufficient to waive Eleventh Amendment immunity without specific consent to be sued in federal court. *Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150 (1981).

The Maryland General Assembly has made a limited waiver of sovereign immunity to tort actions in the Maryland Tort Claims Act ("MTCA"). *See* Md. Code Ann., State Gov't §§ 12-101 -- 12-110. Civil conspiracy (Count XIII) is a common law tort in Maryland. *See Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 189, 665 A2d 1038, 1044-45 (1995). Constitutional claims under Maryland's Declaration of Rights are also torts for purposes of the State's waiver of sovereign immunity under the Maryland Tort Claims Act ("MTCA"). *Prince George's County v. Longtin*, 190 Md. App. 97, 117-18, 988 A.2d 20, 32 (2010), *aff'd*, 419 Md. 450 (2011). The MTCA's waiver, however, is limited only to actions brought in State court. Md. Code Ann., State Gov't § 12-104(a)(1). As such, it does not waive the State's Eleventh Amendment Immunity in federal court. *Sossamon v. Texas*, 563 U.S. 277, 284-85 (2011); *see also Clark v. Md. Dep't of Public Safety & Correctional Servs.*, 247 F. Supp. 2d 773, 775 (D. Md. 2003)(dismissing claims of intentional infliction of emotional distress and civil conspiracy against a principal department of the State because of Eleventh Amendment immunity). As a result, Counts XII and XIII must be dismissed with prejudice as to the State as well as the Article 19, 24, and 40 claims against the State in Count IV.

To the extent that Drs. Alexander, Fowler, and Weedn are being sued for monetary damages in their official capacities, they have Eleventh Amendment immunity to the same claims (Counts IV, XII, and Count XIII) as well. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State." *Hutto v. South Carolina Retirement System*, 773 F.3d 536, 549 (4th Cir. 2014).

**V.    Civil Conspiracy is Not an Independently Actionable Claim, So Count XIII Must Be Dismissed.**

In Count XIII, Plaintiffs have alleged a civil conspiracy to violate their rights to access the courts under Articles 19, 24, and 40 of the Maryland Declaration of Rights. (Doc. No. 38 at ¶¶ 308-14.) Articles 19, 24, and 40 are the same substantive rights for which Plaintiffs seek redress in Count IV. (*See id.* at ¶¶ 240-46.) State and federal courts have found that civil conspiracy is not an independently actionable tort separate from the underlying substantive torts. *Maniki v. Mass Transit Administration*, 360 Md. 333, 360 n.6, 758 A.2d 95, 110 n.6 (2000); *Seneca One Finance, Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 466 (D. Md. 2016). As a result, Count XIII must be dismissed with prejudice.

<u>**CONCLUSION**</u>

For the above reasons, Defendants respectfully request that this Court grant their motion to dismiss.

Respectfully submitted,

BRIAN E. FROSH
ATTORNEY GENERAL OF MARYLAND


_____/s/_____
Christopher A. Gozdor
Federal Bar No. 16136
Assistant Attorney General
Maryland Attorney General's Office
300 West Preston Street, Suite 201
Baltimore, Maryland 21201
Ph: (410) 767-1856 / Fax: (410) 333-7467
E-Mail:  christopher.gozdor@maryland.gov

Attorneys for Defendants State of Maryland, Dr. Alexander,
Dr. Fowler, and Dr. Weedn